IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-872-D

| | | |
|---|---|---|
| TIMOTHY J. ARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ALAN EUGENE JACKSON, and | ) | |
| SONY MUSIC HOLDINGS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

On October 27, 2016, Timothy J. Arnett ("Arnett") sued Alan Eugene Jackson and Sony Music Holdings, Inc., (collectively, "defendants") for copyright infringement under the Copyright Act, 17 U.S.C. § 101, et seq. [D.E. 1]. On November 17, 2016, defendants moved to dismiss Arnett's complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 8] and filed a supporting memorandum [D.E. 9]. On December 15, 2016, Arnett filed an amended complaint [D.E. 17]. Arnett seeks an injunction, profits attributable to defendants' infringement, statutory damages, attorneys' fees, and costs. Id. ¶¶ 36–38 & Prayer for Relief. On January 9, 2017, defendants moved to dismiss the amended complaint under Rules 12(b)(2) and 12(b)(6) [D.E. 19] and filed a supporting memorandum [D.E. 20]. On February 9, 2017, Arnett responded in opposition [D.E. 22]. On February 23, 2017, defendants replied [D.E. 23]. As explained below, the court denies as moot defendants' motion to dismiss the original complaint and grants defendants' motion to dismiss the amended complaint.

I.

Arnett composes music. Am. Compl. [D.E. 17] ¶¶ 12–13. In 2001, Arnett—inspired by his niece's death and the September 11th terrorist attacks—wrote the words and composed the music

to a song entitled *Remember Me*. Id. ¶ 13. In December 2001, Arnett received copyrights for the song. Id. ¶ 15. He owns all registrations and copyrights in *Remember Me*. Id. ¶ 16.

In 2003, defendant Alan Eugene Jackson ("Jackson") copyrighted a song entitled *Remember When*. Id. ¶ 24. Jackson performed *Remember When* at concerts, including one held at PNC Arena in Raleigh, North Carolina, on October 27, 2016. Id. ¶¶ 4, 25. Jackson, along with defendant Sony Music Holdings, Inc., ("Sony Music Holdings"), recorded Jackson's performances of *Remember When*, copied the recorded performances, and released the recordings and copies to the public for purchase and download from the internet. Id. ¶¶ 28, 32. Sony Music Holdings is a general partner in Sony Music Entertainment, the record company responsible for creating and circulating recordings of *Remember When*. Id. ¶ 6.

Arnett claims that *Remember When* infringes his copyright of *Remember Me*. Id. ¶ 22. According to Arnett, *Remember When* is "a derivative work based on *Remember Me*, and particularly on the music of *Remember Me*," and is "strikingly similar" to *Remember Me*, a conclusion strengthened by the "mimicry of the title and theme" of *Remember Me*. Id. ¶¶ 21–23.

Before creating *Remember When*, Jackson allegedly had access to *Remember Me* through several avenues. After creating *Remember Me*, Arnett personally performed the song at events, posted audio recordings of it on the internet, and sold recordings of it. Id. ¶¶ 17–18. *Remember Me* was reviewed by Tom Defries, "who had a business relationship with recording and publishing companies that also handled Mr. Jackson's works"; submitted to and circulated by Dan Huff, "who was an acquaintance of Mr. Jackson"; submitted to and reviewed by "T. Bone Burnett, whose work includes recordings handled by Sony Music Entertainment and its labels with which [Jackson] was affiliated"; and "accepted for review and consideration for inclusion on an album by Faith Hill," with whom Jackson performed "during that time." Id. ¶ 19.

2

II.

The docket contains two pending motions to dismiss: defendants' motion to dismiss Arnett's original complaint [D.E. 8] and defendants' motion to dismiss Arnett's amended complaint [D.E. 19]. Arnett's amended complaint, which he filed as of right, mooted defendants' motion to dismiss the original complaint. See, e.g., Evans v. Rich, No. 5:13-CV-868-BO, 2015 WL 8244039, at *2 & n.1 (E.D.N.C. Jan. 19, 2015) (unpublished); Shackley v. Aden, No. 4:13-CV-80-F, 2014 WL 1055653, at *3 (E.D.N.C. Mar. 14, 2014) (unpublished); Romanello v. Bank United, Inc., No. 5:12-CV-371-FL, 2013 WL 3148233, at *1 n.1 (E.D.N.C. June 19, 2013) (unpublished). Thus, the court denies that motion as moot and addresses defendants' motion to dismiss the amended complaint.

Defendants argue that Arnett fails to state a claim upon which relief can be granted because he has not plausibly alleged that Jackson had access to *Remember Me*. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Id. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is

3

plausible on its face." Id. (quotation omitted).

To prove copyright infringement, a plaintiff must show that he owned the copyright on the work allegedly copied and that the defendant copied protected elements of that work. See, e.g., Humphrey's & Partners Architects v. Lessard Design, Inc., 790 F.3d 532, 537 (4th Cir. 2015). A plaintiff lacking direct evidence of copying can prove copying via circumstantial evidence. See id. A plaintiff can "create a presumption of copying by indirect evidence establishing that the defendant had access to the copyrighted work and that the defendant's work is substantially similar to the protected material." Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 801 (4th Cir. 2001) (quotation omitted); see Bldg. Graphics, Inc. v. Lennar Corp., 708 F.3d 573, 577 (4th Cir. 2013).

"To prove access, the plaintiff must show that the defendant had an opportunity to view or copy the work." Bldg. Graphics, 708 F.3d at 577. "A mere possibility that such an opportunity could have arisen will not suffice. Rather, it must be reasonably possible that the paths of the infringer and the infringed work crossed paths." Towler v. Sayles, 76 F.3d 579, 582 (4th Cir. 1996); see Bldg. Graphics, 708 F.3d at 577. Arnett contends that Jackson had access to *Remember Me* because it was widely disseminated and sent to third-party intermediaries who knew Jackson. See Am. Compl. ¶ 19.

As for Arnett's argument about *Remember Me* being widely disseminated, "[p]ublic dissemination of a work merely creates the possibility of access." Bldg. Graphics, Inc. v. Lennar Corp., 866 F. Supp. 2d 530, 541 (W.D.N.C. 2011) (quotation omitted), aff'd, Bldg. Graphics, Inc. v. Lennar Corp., 708 F.3d 573 (4th Cir. 2013). "[T]he existence of the plaintiff's copyrighted materials on the Internet, even on a public and 'user-friendly' site, cannot by itself justify an inference that the defendant accessed those materials." Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1108 (7th Cir. 2017) (collecting cases); see Bldg. Graphics, 708 F.3d at 580;

4

Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1145 (9th Cir. 2009); Bldg. Graphics, 866 F. Supp. 2d at 541; O'Keefe v. Ogilvy & Mather Worldwide, Inc., 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008). Thus, the court does not infer Jackson's access to *Remember Me* based on its presence on the internet.

This conclusion also applies to Arnett's argument that Jackson had access to *Remember Me* because Arnett sold recordings of it. Absent a reasonable possibility that the alleged infringer obtained or was exposed to the protected work, the mere public distribution of the protected work does not support a reasonable inference of access. See Bldg. Graphics, 708 F.3d at 575, 580 (holding that the act of making sales brochures depicting protected work publicly available did not, without more, establish a reasonable possibility that the infringer viewed the protected work). A reasonable inference of access can follow from the protected work's "considerable commercial success." Silberstein v. Fox Ent't Grp., Inc., 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004), aff'd sub nom. Silberstein v. John Does 1-10, 242 F. App'x 720 (2d Cir. 2007) (per curiam) (unpublished). A reasonable inference of access also can stem from a large amount of copies sold. See Art Attacks Ink, LLC, 581 F.3d at 1144 (referencing a case where 19,000 copies sold of a video over a 13-year period was insufficient, another where 2,000 copies of a book sold was insufficient, and holding that 2,000 t-shirts sold was insufficient); Feldman v. Twentieth Century Fox Film Corp., 723 F. Supp. 2d 357, 365–66 (D. Mass. 2010); Silberstein, 424 F. Supp. 2d at 627; Hoch v. MasterCard Int'l Inc., 284 F. Supp. 2d 1217, 1220–21 (D. Minn. 2003). Arnett has not alleged that *Remember Me* was a commercial success, and he offers no estimate of the amount of copies sold. At most, Arnett plausibly alleges the mere possibility that Jackson had the opportunity to listen to or copy *Remember Me* via Arnett's distributed recordings. That mere possibility does not suffice.

As for Arnett's attempt to establish Jackson's access to *Remember Me* because people who

5

knew Jackson had access to the song, "[a] court may infer that the alleged infringer had a reasonable possibility of access if the author sent the copyrighted work to a third party intermediary who has a close relationship with the infringer." Towler, 76 F.3d at 583; see Bouchat v. Balt. Ravens, Inc., 241 F.3d 350, 354 (4th Cir. 2001). "[T]o maintain that an alleged infringer had a reasonable possibility of intermediary access to a copyrighted work, a plaintiff must establish that the alleged infringer and intermediary maintained a close relationship and that their dealings involved some overlap in subject matter." Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC, 977 F. Supp. 2d 567, 589 (E.D. Va. 2013); see Towler, 76 F.3d at 583. Some examples of close relationships include where the: "(1) intermediary supervises the alleged infringer; (2) intermediary and alleged infringer are employed in the same department; (3) intermediary and alleged infringer share office space; or (4) intermediary and alleged infringer exchange creative ideas." Charles W. Ross Builder, Inc., 977 F. Supp. 2d at 589; see Bouchat, 241 F.3d at 354; Towler, 76 F.3d at 583.

The Fourth Circuit "has rejected mere 'speculative reasoning' as a basis for proving access, especially when intermediaries are involved." Bouchat, 241 F.3d at 354 (quoting Towler, 76 F.3d at 583). "Reasoning that amounts to nothing more than a 'tortuous chain of hypothetical transmittals' is insufficient to infer access." Id. (quoting Towler, 76 F.3d at 583). The theoretical possibility that the third-party intermediary could have sent the protected work to the alleged infringer does not suffice. See Bouchat, 241 F.3d at 354; Towler, 76 F.3d at 583; Charles W. Ross Builder, Inc., 977 F. Supp. 2d at 585. Reasoning is similarly speculative where nothing establishes that the alleged infringer had contact with the third-party intermediary during the period the alleged infringer was working on the allegedly copied work. See Towler, 76 F.3d at 583.

Arnett contends that Jackson had access to *Remember Me* through several third-party intermediaries: Tom Defries, who reviewed *Remember Me* and "had a business relationship with

6

recording and publishing companies that also handled Mr. Jackson's works"; Dan Huff, "who was an acquaintance of Mr. Jackson"; "T. Bone Burnett, whose work includes recordings handled by Sony Music Entertainment and its labels with which [Jackson] was affiliated"; and Faith Hill, who accepted *Remember Me* for review and consideration for inclusion on an album and with whom Jackson performed "during that time." Am. Compl. ¶ 19; see [D.E. 22] 9.

None of these connections constitute the "close connections" the Fourth Circuit requires. It is purely hypothetical that Jackson had contact with these individuals while creating *Remember When* or that these individuals sent *Remember Me* to Jackson. See Towler, 76 F.3d at 583. Moreover, Arnett does not plausibly allege that Jackson had a reasonable opportunity to encounter *Remember Me* while these individuals allegedly possessed it. See id. Rather, Arnett relies on a "tortuous chain of hypothetical transmittals." Indeed, Arnett's list parallels that present in Towler, where the plaintiff "conclude[d] her argument by naming a host of individuals connected with film production who received the screenplay from [the plaintiff] and who presumably could have sent the work to [the alleged infringer]." Id. As in Towler, Arnett's "speculative reasoning is wholly unpersuasive." Id.

Finally, Arnett argues that *Remember When* is so "strikingly similar" to Arnett's *Remember Me* "as to preclude reasonable explanations other than copying." [D.E. 22] 9–10; see Am. Compl. ¶ 23. In dicta, the Fourth Circuit has discussed the "strikingly similar doctrine," which "permits an inference of access in cases where the two works in question are so familiar as to create a high probability of copying and negate the reasonable possibility of independent creation." Bouchat, 241 F.3d at 355–56; cf. Charles W. Ross Builder, Inc., 977 F. Supp 2d at 582 n.3 (stating that it is "unclear whether the Fourth Circuit has adopted the strikingly similar doctrine"). Although "the level of similarity between the contested works can be used as evidence of access," it "does not per

7

se relieve the plaintiff of his burden of establishing access." Bouchat, 241 F.3d at 356 (emphasis omitted). Countervailing evidence can overcome the inference of access that striking similarity provides. See id.

A plaintiff must "provide[] a plausible allegation establishing a striking similarity between the works" by "alleg[ing] facts supporting striking similarity." Wager v. Littell, No. 12-CV-1292 TPG, 2013 WL 1234951, at *3 (S.D.N.Y. Mar. 26, 2013) (unpublished), aff'd, 549 F. App'x 32 (2d Cir. 2014) (per curiam) (unpublished); see Peters v. West, 776 F. Supp. 2d 742, 748 (N.D. Ill. 2011), aff'd, 692 F.3d 629 (7th Cir. 2012). That two works are "associated at the most conceptual level" does not suffice. Wager, 2013 WL 1234951. Nor does an allegation that "harmonic progressions are identical," especially when the plaintiff "admits that discrepancies exist between the two songs." Davis v. Raymond, No. 12-22578-CIV, 2012 WL 12868729, at *4 (S.D. Fla. Nov. 29, 2012) (unpublished).

Arnett does little more than recite the Fourth Circuit's phrasing of the strikingly similar test, a legal conclusion the court need not accept as true. To the extent Arnett goes beyond reciting legal standards, Arnett alleges that the two works are strikingly similar due to Jackson's "mimicry of the title and theme" of *Remember Me*. Am. Compl. ¶ 23. But Arnett does not say what common theme the two works allegedly share or how similar they are. Arnett's bare assertions devoid of further factual enhancement do little to plausibly allege that "the two works in question are so familiar as to create a high probability of copying and negate the reasonable possibility of independent creation." Bouchat, 241 F.3d at 355–56. Arnett's allegations of striking similarity are speculative and do not nudge his claims into the realm of plausibility.

Because Arnett fails to plausibly allege access as required to state a claim for copyright infringement, the court does not address defendants' alternative arguments regarding personal

jurisdiction and the statute of limitations.

III.

In his response in opposition to defendants' motion to dismiss the amended complaint, Arnett requests leave to amend his complaint should the court hold that he fails to plausibly allege access. See [D.E. 22] 11. A party generally may amend its complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1). Arnett has done so. [D.E. 17]. Further amendments are allowed "only with the opposing party's written consent or the court's leave," although "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under Rule 7(b)(1) of the Federal Rules of Civil Procedure, "[a] request for a court order must be made by motion." A responsive brief is not an appropriate means to request leave to amend a complaint. See Jemsek v. N.C. Med. Bd., No. 5:16-CV-59-D, 2017 WL 696721, at *12 (E.D.N.C. Feb. 21, 2017) (unpublished) (collecting cases). Moreover, Local Civil Rule 15.1(a) requires parties seeking leave to amend to attach a proposed amended complaint and a red-line version indicating how the proposed amended complaint differs from the complaint it amends. Thus, a court properly denies a plaintiff's request to amend the complaint "where, as here, the plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make." Estrella v. Wells Fargo Bank, N.A., 497 F. App'x 361, 362 (4th Cir. 2012) (per curiam) (unpublished). Because Arnett did not file a motion to amend and a proposed amended complaint, the court denies his request for leave to amend. See Jemsek, 2017 WL 696721, at *12.

IV.

In sum, the court DENIES as moot defendants' motion to dismiss the original complaint [D.E. 8] and GRANTS defendants' motion to dismiss the amended complaint [D.E. 19].

9

SO ORDERED. This _14_ day of August 2017.

JAMES C. DEVER III
Chief United States District Judge